IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ESTATE OF LEVI ANDELIN BUTLER, by and through his Personal Representative, JOSHUA BUTLER,<br><br>        Plaintiff,<br><br>vs.<br><br>MAHARISHI UNIVERSITY OF MANAGEMENT, and MAHARISHI VEDIC EDUCATION DEVELOPMENT CORPORATION,<br><br>        Defendants. | No. 4:06-cv-00072-JEG<br><br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT** |

        This matter is before the Court on Defendant Maharishi University of Management's

Motion for Summary Judgment.  Defendant moved for summary judgment on Plaintiff's claims

on May 22, 2006.  Hearing was held on the motion on September 25, 2006.[1]  Attorney Steven

Serck appeared for Defendant; and attorneys Lawrence McLellan, Lawrence Scalise, and

Stephen Eckley appeared for Plaintiff.  The matter is now fully submitted for review.  For the

reasons discussed below, Defendant's Motion for Summary Judgment must be **denied**.

## SUMMARY OF MATERIAL FACTS

        Levi Andelin Butler began attending Maharishi University of Management ("MUM") as

a student in September of 2003.  On March 1, 2004, Shuvender Sem, another MUM student,

attacked fellow student John Killian during class, stabbing Killian in the face and throat with a

---

[1] Following the Defendant's Motion for Summary Judgment, an extension of time in which to respond was obtained by the Plaintiff.  A collateral issue regarding disqualification of counsel needed to be resolved, and supplemental reply materials were filed.  Thus, the matter was not fully submitted until September.

pen.  A fellow student came to Killian's aid, and the attack came to an end.[2]  Sem was placed into the custody of Joel Wynsong, the dean of men, and was taken to Wynsong's campus apartment.  After completing some meditation, Wynsong discovered that Sem had left the apartment.  Wynsong subsequently left his apartment to find Sem and eventually located him in the student dining hall.  Wynsong did not immediately take Sem back into custody but instead left him to mingle with the other students as Wynsong observed.  Sem engaged Levi Butler, who was present in the dining hall, in conversation, and then suddenly pulled a paring knife from his coat and began stabbing Levi in the chest multiple times.  Students witnessing the attack phoned 911; however, by the time paramedics reached Levi, he was unresponsive, and he passed away later that evening.  The cause of death was stab wounds to the chest.[3]

On June 1, 2004, Khal and Evelyn Butler, Levi's parents, were appointed to serve as co-administrators of Levi's estate.  Khal and Evelyn retained legal counsel in Iowa to investigate the circumstances surrounding Levi's death.  The Estate of Levi Butler ("the Estate") asserts that Khal and Evelyn's legal counsel in Iowa advised them that in addition to claims on behalf of the Estate, under California law, as Levi's parents, they would also have a personal claim in their own right.  Khal and Evelyn reportedly became concerned that conflicts could arise from their dual roles as co-administrators in an Iowa federal lawsuit and co-plaintiffs in a California state lawsuit.  Because of this perceived potential for conflict, on January 19, 2006, Khal and Evelyn signed a petition requesting that they be allowed to resign as co-administrators of the Estate and

---

[2] On February 24, 2006, Killian filed a Complaint against MUM and Maharishi Vedic Education Development Corporation based upon the injuries he received during this attack.  That case is numbered 4:06-cv-00071.

[3] Sem was ultimately found not guilty by reason of insanity and committed to the Iowa Medical and Classification Center at Oakdale.

that Joshua Butler, Levi's brother, be appointed in their stead.  Khal and Evelyn claim that

unbeknownst to either of them or their Iowa legal counsel, this petition was not filed by

California probate counsel until February 2, 2006.  On February 1, 2006, Joshua signed a

petition for Letters of Administration, which was filed on February 2, 2006.

       Plaintiff asserts that sometime in January, Khal was informed that "everything had been

taken care of" and thus believed that the change of administrators had been completed, believing

that the change in administrators was a mere formality requiring nothing more than court

approval.  Based upon this belief, Khal advised the Estate's legal counsel in Iowa, attorney

Stephen Eckley, that the change in administrators had been completed and that Joshua was now

the Estate's administrator.  On February 14, 2006, the California Probate Court set the hearing

on Khal and Evelyn's petition to resign as co-administrators for March 13, 2006.

       On February 24, 2006, the Estate of Levi Andelin Butler, listing Joshua as the personal

representative of the Estate, filed a Complaint in this court against MUM and the Maharishi

Vedic Education Development Corporation ("MVEDC").  This Court has original jurisdiction

over the claims asserted based upon 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds

$75,000, and the action is between citizens of different states:  MUM is an Iowa corporation,

MVEDC is a Massachusetts corporation, and Plaintiff is a citizen of California.[4]

       In the Complaint, the Estate listed counts of gross negligence (count one), premises

liability (count two), fraudulent misrepresentation (count three), negligence (count four), and

---

[4] "[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent".  28 U.S.C. § 1331(c)(2).  Levi maintained his citizenship in California while he was attending MUM.  Additionally, Khal, Evelyn, and Joshua are all California citizens in their own right by virtue of their own residency in that state.

negligent misrepresentation (count five).[5]  The Estate contends that it was Khal and Evelyn, as

co-administrators of the Estate, that directed Iowa counsel to file the Complaint in this matter.

On February 27, 2006, Khal and Evelyn filed an action against MUM, MVEDC, and

others in California's Riverside Superior Court, naming themselves, and not the Estate, as plain-

tiffs.[6]  In that case, Khal and Evelyn alleged claims for wrongful death/gross negligence, negli-

gence, premises liability, fraudulent misrepresentation, negligent misrepresentation, breach of

contract, California Consumer Legal Remedies Act violations, and Unfair Business

Practices violations.

On March 10, 2006, MVEDC, as an interested party in the California probate action,

filed an objection to Joshua's petition to be named administrator of his brother's estate and to

Khal and Evelyn's petition to resign.  MVEDC asserted in its objection that Khal and Evelyn, by

attempting to withdraw as co-administrators and have Joshua appointed in their place, were

trying to block legitimate consolidation of the California action and the Iowa federal court

action.  Hearing was held on the matter on March 13, 2006, at which time MVEDC requested to

postpone the hearing.  A subsequent hearing on the matter was held on April 13, 2006.

---

[5] Both MUM and MVEDC filed answers, and on April 5, 2006, MUM filed a Third-Party Complaint against Sem.

[6] On March 29, 2006, the defendants in the California state court action filed a Notice of Removal to Federal Court; and then on April 4, 2006, they filed a Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, Transferring Action to the Southern District of Iowa.  On April 17, 2006, U.S. District Judge John Walter remanded the case to the Los Angeles County Superior Court, finding there was not complete diversity of citizenship because defendant Maharishi Vedic University (who is not a party to the present action) was a California citizen as are both Khal and Evelyn Butler.  Defendants' motion to dismiss was therefore denied as moot. On August 17, 2006, California Superior Court Judge Lawrence Fry stayed the California state case pending the outcome of the Iowa federal court action.  MUM asserts that from the inception of the California case up to the date of the stay, they expended over $127,000 in attorneys fees and costs in defending the California action.

On April 20, 2006, the Estate filed an Amended Complaint in the Iowa federal court action, asserting claims of premises liability (count one), fraudulent misrepresentation (count two), and negligence (count three).  The Amended Complaint dropped the claims for gross negligence and negligent misrepresentation, and again listed Joshua as the personal representative of the Estate.  Again, the Estate contends that it was Khal and Evelyn, as co-administrators of the Estate, that directed Iowa counsel to file the Amended Complaint.

In an order dated April 27, 2006, and filed on April 28, the California probate court granted Khal and Evelyn's petition to resign.  In a separate order dated April 27, the court granted Joshua's petition for Letters of Appointment.  This order, filed April 28, indicated that the appointment was not effective until letters were issued.  Joshua's Letters of Appointment were issued on April 28, 2006.

On May 22, 2006, MUM filed a Motion for Summary Judgment, claiming that it is entitled to judgment as a matter of law because the wrongful death action was not commenced by an individual with capacity to sue prior to the expiration of the applicable statute of limitations.  MUM requests the Complaint be dismissed in its entirety.

Plaintiff resists the Motion for Summary Judgment.  Plaintiff asserts that under Iowa law and applicable federal law, Joshua Butler's appointment as estate administrator would relate back to the time this lawsuit was filed.

## APPLICABLE LAW AND DISCUSSION

### I.     Summary Judgment Standard

Defendant is entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that [defendant] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Although we view the facts in a

light most favorable to the nonmoving party, in order to defeat a motion for summary judgment, the nonmoving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Carter v. St. Louis University, 167 F.3d 398, 400 (8th Cir. 1999).

To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. Buettner v. Arch Coal Sales Co., 216 F.3d 707, 718 (8th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Lickteig v. Business Men's Assur. Co. of America, 61 F.3d 579, 583 (8th Cir. 1995). The nonmoving party must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Beyerbach v. Sears, 49 F.3d 1324, 1325 (8th Cir. 1995). The Court views all the facts in the light most favorable to the nonmoving party and gives that party the benefit of all reasonable inferences that can be drawn from the facts. Lickteig, 61 F.3d at 583.

## II.    Applicable Statute of Limitations

The three causes of action that the Estate has alleged – premises liability, fraudulent misrepresentation, and negligence – are all based upon the injury and subsequent death of Levi. "The applicable statue of limitations is determined by the nature of the cause of action, which is in turn determined by the rights sued upon." Rodenburg v. Lathrop, 2001 WL 1580498, *2 (Iowa App. 2001). There is a two-year statute of limitation imposed upon injuries to persons. Iowa Code § 614.1(2). By statute, the Estate had two years from the date of the discovery of Levi's death to file its claims. The parties do not dispute the applicability of the two-year statute

6

of limitations.[7]  The earliest date on which the Estate could have discovered the injury to Levi

was March 1, 2004.  Thus, the statute of limitations for any claims stemming from his injury

would have expired on March 1, 2006.

### III.    Rule 17 - Real Party in Interest and Capacity to Sue or be Sued

MUM contends Fed. R. Civ. P. 17 is controlling.  Plaintiff contends that Rule 17(a)

authorizes the substitution of the real party in interest or ratification of the commencement of the

action by the real party in interest.  Rule 17 states,

> Every action shall be prosecuted in the name of the real party in interest.
> An executor, administrator, guardian, bailee, trustee of an express trust, a
> party with whom or in whose name a contract has been made for the benefit
> of another, or a party authorized by statute may sue in that person's own
> name without joining the party for whose benefit the action is brought; and
> when a statute of the United States so provides, an action for the use or
> benefit of another shall be brought in the name of the United States.  *No
> action shall be dismissed on the ground that it is not prosecuted in the name
> of the real party in interest until a reasonable time has been allowed after
> objection for ratification of commencement of the action by, or joinder or
> substitution of, the real party in interest*; and such ratification, joinder, or
> substitution shall have the same effect as if the action had been commenced
> in the name of the real party in interest.

Fed. R. Civ. P. 17(a) (emphasis added).  "The real party in interest is a party who, under

governing substantive law, possesses the rights to be enforced."  Consul General of Republic of

Indonesia v. Bill's Rentals, Inc., 330 F.3d 1041, 1045 (8th Cir. 2003).  "In a diversity action,

state law determines the issue of who is a real party in interest."  Jaramillo v. Burkhart, 999 F.2d

1241, 1246 (8th Cir. 1993); see also Consul General of Republic of Indonesia, 330 F.3d at 1045.

---

[7] There is a five-year statute of limitations on claims of fraud; however, because the
applicable statute of limitations is determined by the rights sued upon, which here is the
wrongful death of Levi, the two-year statute of limitations would apply, and Plaintiff does not
argue the five-year statute of limitations applies to its fraudulent misrepresentation claim.

> The capacity of an individual, other than one acting in a representative
> capacity, to sue or be sued shall be determined by the law of the individual's
> domicile.  The capacity of a corporation to sue or be sued shall be deter-
> mined by the law under which it was organized.  In all other cases capacity
> to sue or be sued shall be determined by the law of the state in which the
> district court is held, except (1) that a partnership or other unincorporated
> association, which has no such capacity by the law of such state, may sue or
> be sued in its common name for the purpose of enforcing for or against it a
> substantive right existing under the Constitution or laws of the United
> States, and (2) that the capacity of a receiver appointed by a court of the
> United States to sue or be sued in a court of the United States is governed by
> Title 28, U.S.C., Sections 754 and 959(a).

Fed. R. Civ. P. 17(b).  "[T]he federal court is bound by state law in determining the capacity of an individual to sue in a representative capacity."  Mann v. De Moss, 323 F. Supp. 1126, 1127 (S.D. Iowa 1971).  Thus the law of the state of Iowa governs the determination of Joshua's capacity to sue.

> Any action contemplated in sections 611.20[8] and 611.21 may be brought, or
> the court, on motion, may allow the action to be continued, by or against the
> legal representatives or successors in interest of the deceased.  Such action
> shall be deemed a continuing one, and to have accrued to such representa-
> tive or successor at the time it would have accrued to the deceased if the
> deceased had survived.  If such is continued against the legal representative
> of the defendant, a notice shall be served on the legal representative as in
> case of original notices.

Iowa Code § 611.22.  "The right to recover wrongful death damages vests exclusively in the personal representative of the estate."  Matter of Estate of Voss, 553 N.W.2d 878, 881 (Iowa 1996); see also Estate of Dyer v. Krug, 533 N.W.2d 221, 224 (Iowa 1995).  Under Iowa law, the legal representative of an estate is either the executor or the administrator, depending on whether an individual died testate or intestate.  Iowa Code § 633.3(30).  Because Levi died intestate,

---

[8] "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same."  Iowa Code § 611.20.

there was no executor, thus only the administrator appointed by the court possessed the right to bring suit for wrongful death damages.

"When there is no administration of an estate nor a petition therefor pending, in this state, a foreign fiduciary may maintain actions and proceedings in this state subject to the requirements and conditions imposed upon nonresident suitors generally."  Iowa Code § 633.148.  "At the time of commencing any action or proceeding in any court of this state, the foreign fiduciary shall file with the court an authenticated copy of the fiduciary's appointment, and of the fiduciary's official bond, if the fiduciary has given a bond."  Iowa Code § 633.149.  These requirements are applicable to actions commenced in federal court.  Pearson v. Robinson, 318 N.W.2d 188, 190-191 (Iowa 1982).

Based upon the foregoing, the administrator is the real party in interest in a wrongful death case.  It is undisputed that Joshua Butler was not the administrator of the Estate when the initial Complaint was filed on February 24, 2006, or when the Amended Complaint was filed on April 20, 2006.  Although Judge Cox indicated at the April 13, 2006, hearing regarding the California probate petitions that the petition regarding the appointment of Joshua as the successor administrator would be granted, Joshua did not become the administrator of the Estate until April 28, 2006, when his Letters of Appointment were issued.  See  Cal. Prob. Code § 8400(a) ("A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective.  Appointment of a personal representative becomes effective when the person appointed is issued letters.").  Because Joshua was not the administrator at the time of the filing of either the Complaint or the Amended Complaint, he was not the real party in interest and did not have the legal capacity to file suit on behalf of the Estate prior to April 28, 2006.

9

Rule 17 provides a method for preventing the forfeiture of legitimate actions that are mistakenly brought by a party other than the real party in interest.  Rule 17(a) "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."  <u>Crowder v. Gordons Transports, Inc.</u>, 387 F.2d 413, 418, <u>rev'd on other grounds</u>, 419 F.2d 480 (8th Cir. 1969) (quoting 28 U.S.C.A. Rule 17, notes to 1966 Amendment).  The rule provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest . . . ."  Rule 17(a).  Paragraph 4 of Plaintiff's Complaint states, "The Estate of Levi Andelin Butler is being probated in Riverside County, California, through its personal representative, Joshua Butler, who is a citizen of California."  In its March 27, 2006, Answer to the Complaint, MUM responded, "Paragraph 4 is denied."  MVEDC responded, "MVEDC denies the allegations of Paragraph 4 of Plaintiff's Complaint."  In setting forth its defenses, MUM specifically indicated, "Plaintiff Joshua Butler lacks capacity to assert the claims he purports to assert on behalf of the Estate of Levi Butler."[9]  MVEDC affirmatively stated in its Answer, "Plaintiff lacks standing to bring the claims contained in the Complaint."

As previously noted, on April 20, 2006, Plaintiff filed an Amended Complaint, which again stated in paragraph four, "The Estate of Levi Andelin Butler is being probated in Riverside County, California, through its personal representative, Joshua Butler, who is a citizen of

---

[9] Pursuant to Fed. R. Civ. P. 8(c), MUM also set forth affirmatively that "[S]ome or all of Plaintiff's claims are barred by applicable statutes of limitations."  MVEDC also affirmatively set forth a statute of limitations defense in its Answer.

California."[10]  On April 28, 2006, MVEDC filed its Answer to the Amended Complaint and indicated, "MVEDC denies the allegations of Paragraph 4 of Plaintiff's Amended and Substituted Complaint."  MVEDC again asserted the affirmative defense of statute of limitations and that Plaintiff lacked standing to bring the claims.  MUM responded to the Amended Complaint on May 3, 2006, and stated, "Paragraph 4 is denied for lack of information."  MUM again asserted the affirmative defense of statutes of limitations and claimed that Joshua lacked capacity to bring suit.  The Court will deem the allegations regarding Joshua's lack of standing to bring suit contained in both MUM and MVEDC's Answers[11] as Rule 17(a) objections to the suit not being brought by the real party in interest.  The earliest such objection was made on March 27, 2006, when each Defendant alleged such in its Answer.  On June 16, 2006, as an exhibit attached to Plaintiff's Response to the Motion for Summary Judgment, Joshua, by that time now the real party in interest, indicated he ratified the filing of the original Complaint and the First Amended and Substituted Complaint.

---

[10] The deadline for responding to Plaintiff's April 13, 2006, Motion to Amend Complaint was set for May 1, 2006.  Plaintiff indicated in the brief accompanying its motion that Defendants had rejected Plaintiff's request to consent to these amendments.  On April 19, 2006, MUM filed a Notice of Non-Resistance to Plaintiff's Motion to Amend, and MVEDC filed a Consent to Filing of Amended and Substituted Complaint, thus prompting Judge Longstaff to rule on the Motion to Amend.  Specifically, in a text order dated April 19, 2006, the court indicated that, "Based on the notices of non-resistance filed on this date, it is ordered that Plaintiff's motion to amend/correct the complaint is granted.  The Clerk of Court is directed to detach and file the First Amended Complaint . . . ."  The Court notes that had these notices not been filed, the time for response would have been allowed to elapse on May 1, 2006, and the Amended Complaint would have, in all likelihood, been filed on or after that date, at which time Joshua's appointment would have been effective and valid.  The Amended Complaint relates back to the original complaint, and thus had it been filed on or after May 1, it would seemingly have negated the instant claim of lack of capacity.

[11] This includes both the Answers to the original Complaint and to the Amended Complaint.

Where Khal in good faith[12] represented to Iowa counsel that Joshua was the administrator, it is an understandable mistake that the Complaint filed by Iowa counsel on February 27, 2006, listed Joshua as the estate administrator and that Iowa counsel brought suit by and through Joshua's name.  Evidence in the record indicates that after the filing of the Complaint, Iowa counsel became aware that Joshua's appointment had not yet been granted.  Jean Ann Hirschi, California counsel for Khal and Evelyn in the probate matter, stated to the court at the March 13, 2006, hearing on the probate petitions,

> It's true, I'm – I understand from the Iowa attorneys that the – that the lawsuit on behalf of the estate was filed on behalf – in the name of Joshua Lee Butler, who is the brother.  But because they mistakenly thought that he had already gotten the change of administrator in this estate.

Iowa counsel explained that he first became aware of the mistake in naming Joshua as the administrator on March 13, 2006, and that he did not file a motion to amend once he was put on notice of the error because in his judgment, it would have made no sense to seek leave to amend to name Khal and Evelyn Butler as the administrators, knowing that they would immediately have to turn around and seek leave to amend again to rename Joshua once his appointment became effective.  Counsel believed that to engage in such an exercise of form over substance would have been a waste of time and resources both for the court and the parties involved.

Pursuant to Rule 17(a), the Court concludes that a reasonable time for ratification by the real party in interest elapsed where Joshua filed an affidavit ratifying the commencement of the action approximately two and a half months after the rule 17(a) objections were asserted by both

---

[12] Accepting the facts in the light most favorable to the nonmoving party, the Court accepts Khal and counsel acted in good faith while making an obvious error, though the Court recognizes some dispute over whether good faith was lacking in the wake of a strategic attempt to manipulate procedure and jurisdiction.

MUM and MVEDC in their respective March 27 Answers to the Complaint.  <u>OSRecovery, Inc.</u>

<u>v. One Groupe Intern., Inc.</u>, 380 F.Supp.2d 243, 249 (S.D.N.Y. 2005) (five months a reasonable

time to respond to Rule 17(a) objection); <u>Western Colorado Fruit Growers Ass'n, Inc. v.</u>

<u>Marshall</u>, 473 F. Supp. 693, 699 (D.C. Colo. 1979) (two months a reasonable time for Rule 17(a)

ratification).  Pursuant to the language of Rule 17(a), such a ratification"shall have the same

effect as if the action had been commenced in the name of the real party in interest."  Under Rule

17, Joshua's ratification avoids a statute of limitations bar, because the action is treated as if

brought in the name of the real party in interest, i.e., the true administrator, at the commencement

of the action on February 27, 2006.

**IV.     Does Joshua's appointment relate back to the date of the filing of the present suit pursuant to Rule 15?**

The Court concludes the same result would obtain under the alternative analysis.

Assuming *arguendo* that the mistake in listing Joshua as the administrator, contained in both the

Complaint and the Amended Complaint, was not "understandable" or that the ratification did not

occur within a reasonable time period, the Court would need to determine if an amendment

under Rule 15 has occurred and whether it would relate back under the provisions of Rule 15(c).

"[T]he issue of relation back is one of procedure and is controlled by the Federal Rules of Civil

Procedure."  <u>Crowder</u>, 387 F.2d at 416; <u>see also</u> <u>Plubell v. Merck & Co., Inc.</u>, 434 F.3d 1070,

1073 (8th Cir. 2006); <u>Steighorst v. Jevne</u>, 2006 WL 903244, at *2 n.1 (E.D. Mo. 2006).  Other

circuits are in agreement.  <u>See</u> <u>Skoczylas v. Fed. Bureau of Prisons</u>, 961 F.2d 543, 544 (5th Cir.

1992); <u>Davis v. Piper Aircraft Corp.</u>, 615 F.2d 606, 612 (4th Cir. 1980); <u>Ingram v. Kumar</u>, 585

F.2d 566, 570 (2nd Cir. 1978); <u>Simmons v. Fenton</u>, 480 F.2d 133, 136 (7th Cir. 1973).

MUM argues that <u>Crowder v. Gordons Transports, Inc.</u>, in which the Eighth Circuit held that the issue of relation back is controlled by the Federal Rules of Civil Procedure, is not controlling.  While <u>Crowder</u> was decided prior to the 1991 Amendment, which added the relation back principle to Rule 15, the principles of <u>Crowder</u> remain good law.  MUM further asserts that Rule 15(c) has no application to this case because that rule relates only to the relation back of amendments, and Plaintiff has not formally made an amendment concerning the proper administrator of the Estate.

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Fed. R. Civ. P. 15(a).  Plaintiff takes the position that to file for amendment at any point after Joshua's Letters of Appointment were issued would be superfluous, because essentially it would be filing to amend the Complaint to read exactly as it did when it was originally filed.

The Court recognizes that while there has been no formal motion for leave to amend, the amendment that would be sought by any such motion would be odd given the unique circumstances of this case, as the necessary amendment would duplicate the original.  In an effort to avoid such arbitrary fealty to procedure over the obvious, the Court construes the current dispute, and related filings, to be seeking the same relief from the Court as would be sought via a motion for leave to amend.

> An amendment of a pleading relates back to the date of the original pleading
> when (1) relation back is permitted by the law that provides the statute of
> limitations applicable to the action, or (2) the claim or defense asserted in
> the amended pleading arose out of the conduct, transaction, or occurrence
> set forth or attempted to be set forth in the original pleading, or (3) the
> amendment changes the party or the naming of the party against whom a
> claim is asserted if the foregoing provision (2) is satisfied and, within the
> period provided by Rule 4(m) for service of the summons and complaint, the
> party to be brought in by amendment (A) has received such notice of the
> institution of the action that the party will not be prejudiced in maintaining a
> defense on the merits, and (B) knew or should have known that, but for a
> mistake concerning the identity of the proper party, the action would have
> been brought against the party.

Fed. R. Civ. P. 15(c).  Rule 15(c) is written in the disjunctive, meaning an amendment can relate

back if either 15(c)(1), 15(c)(2), or 15(c)(3) is fulfilled.

Rule 15(c)(1) incorporates state law relation-back rules.  "Rule 15(c)(1) allows federal

courts sitting in diversity to apply relation-back rules of state law where, as here, state law pro-

vides the statute of limitations for the action."  <u>Saxton v. ACF Industries, Inc.</u>, 254 F.3d 959, 963

(11th Cir. 2001) (citing <u>Arendt v. Vetta Sports, Inc.</u>, 99 F.3d 231, 236 (7th Cir. 1996); <u>Lunday v.</u>

<u>Adamar of N.J., Inc.</u>, 34 F.3d 1173, 1184 (3rd Cir. 1994); <u>McGregor v. Louisiana State Univ.</u>

<u>Bd. of Supervisors</u>, 3 F.3d 850, 863 n.22 (5th Cir. 1993)).

> All amendments must be on a separate paper, duly filed, without interlining
> or expunging prior pleadings.  Whenever the claim or defense asserted in
> the amended pleading arose out of the conduct, transaction, or occurrence
> set forth or attempted to be set forth in the original pleading, the amendment
> relates back to the date of the original pleading.  An amendment changing
> the party against whom a claim is asserted relates back if the foregoing
> provision is satisfied and, within the period provided by law for com-
> mencing the action against the party, the party to be brought in by amend-
> ment has received such notice of the institution of the action that the party
> will not be prejudiced in maintaining a defense on the merits, and knew or
> should have known that, but for a mistake concerning the identity of the
> proper party, the action would have been brought against the party.

Ia. R. 1.402(5).

MUM cites to numerous cases for the principle that Iowa law does not permit relation back under the present circumstances.  See Gardner v. Beck, 189 N.W. 962 (Iowa 1922) (finding that although notice was served prior to the expiration of the statute of limitations, the period of limitation expired prior to plaintiff's subsequent appointment as administrator, a defect that could not be cured); Pearson v. Anthony, 254 N.W. 10, 11-12 (1934) (where plaintiff had no right or capacity to sue at the commencement of the suit and was not appointed administratrix until after the applicable statute of limitations had expired, petition was dismissed as time barred); Estate of Dyer, 533 N.W.2d at 225 (dismissing petition where the person bringing suit had no capacity to sue on behalf of the estate and did not become the legal representative of the estate before the limitations period expired); Estate of Voss, 553 N.W.2d at 882 (finding claimant's 1995 appointment as the administrator of her son's estate did not relate back to retroactively validate her 1993 claim under the Tort Claims Act); Hatcher v. Petersen, 671 N.W.2d 531, (Iowa Ct. App. 2003) ("The relation-back doctrine cannot be applied to retroactively avoid a lack of capacity to bring an action.").

Plaintiff points out that each of these cases are distinguishable from the present circum-stances because in each case, either there was no duly appointed administrator at the time the action was commenced or there was no misnomer.  Gardner, 189 N.W. 962 (when plaintiff filed notice on defendant, listing himself as the administrator, he knew he had not yet been appointed administrator); Pearson, 254 N.W. at 11-12 (at the time plaintiff filed suit listing herself as the administrator, she knew she had not yet secured appointment); Estate of Dyer, 533 N.W.2d at 225 (plaintiff brought action on behalf of her mother's estate as "daughter and administrator", although she was not the administrator and had merely filed a petition to reopen the estate, and in addition had not been the executor when the estate was originally probated); Estate of Voss, 553

N.W.2d at 882 (claimant was the administrator of her son's estate but had failed to exhaust her administrative remedies against the state and thus the district court did not have subject matter jurisdiction); Hatcher, 671 N.W.2d at 531 (estate was not opened prior to the expiration of the five-year statute of limitations ).

MUM contends that the misnomer doctrine is inapplicable because none of the parties in this case have been incorrectly named, and Plaintiff was correctly identified as the Estate.  A misnomer is "[a] mistake in naming a person, place or thing, esp. in a legal instrument."  Black's Law Dictionary (8th Ed. 2004).  The naming of Joshua as the administrator prior to his Letters of Appointment is a mistake in naming the correct legal administrator of the Estate.  Plaintiff states that the mistake occurred because Khal, operating under the mistaken assumption that the mere filing of his petition to withdraw and appoint Joshua in his place was sufficient to make Joshua the new administrator, informed Iowa counsel that the Iowa federal case should be filed listing Joshua as the administrator, and Iowa counsel states he relied solely on Khal's representation regarding the change in administrators when drafting the complaint.  Identifying Joshua as the administrator in the original Complaint appears to be a valid misnomer, i.e., a mistake.  None of the above-cited cases involve the situation present here, namely, that a valid administrator existed, and the wrong administrator was mistakenly included on the face of the complaint.  Iowa courts have allowed amendments to relate back when the amendment would merely correct a misnomer.  See Gutierrez v. Wal-Mart Stores, Inc., 2000 WL 1027264, at *3 (Iowa App. 2000) (trial court did not abuse its considerable discretion in allowing plaintiff's post-trial amendment to correct the naming of defendant as Wal-Mart Stores, Inc., instead of WALMART, even where plaintiff was notified several times by defendant prior to trial that it had incorrectly named the defendant); M-Z Enterprises, Inc. v. Hawkeye-Security Ins. Co., 318 N.W.2d 408, 412 (Iowa

1982) (holding trial court did not abuse its discretion in allowing amendment to relate back

where plaintiff had mistakenly named M.Z. Crane Service, Inc., and not M-Z Enterprises, Inc.,

as the real party in interest); Thune v. Hokah Cheese Co., 149 N.W.2d 176, 178 (Iowa 1967)

(where plaintiff originally listed Hokah Cheese Company, a fictitious trade name, as the sole

defendant and later sought to amend to add Williard Potter, the sole proprietor of Hokah Cheese,

as an additional defendant, the court concluded the amendment did not amount to a substitution

of one party for another after the statute of limitations had run but only corrected a misnomer of

a party who was actually before the court at all times under his assumed fictitious name).  Where

the Iowa courts have refused to allow an amendment to relate back, they have specifically indi-

cated that the amendment sought was not simply correcting a misnomer but was instead sub-

stituting a new party, or it had not satisfied the notice requirement of rule 1.402(5).  Richardson

v. Walgreens, Inc., 680 N.W.2d 379, 2004 WL 360501, at **1 (Iowa App. 2004) (Plaintiff

mistakenly listed Walgreens, Inc., and Walgreens Properties, Inc., two nonexistent entities,

instead of the proper party, Walgreen Co., and Walgreen Co. was not served with notice of the

action until after the expiration of the limitations period.  Under these circumstances, the court

concluded plaintiffs had not satisfied rule 1.402(5) because they had failed to meet the notice

requirement); Morrison v. Shagnasty's Inc., 669 N.W.2d 261, 2003 WL 21459014, at **2 (Iowa

App. 2003) ("There was no misnomer or defect in the description or characterization of the

defendant but an entire change in parties.  We hold this is not proper, particularly after the statute

of limitations has run."); Stites v. Ogden Newspapers, Inc., 2002 WL 663621, at *2 (Iowa App.

2002) (finding plaintiff failed her burden of showing the amended petition related back to the

original petition because defendant added by amendment had received no notice that plaintiff

was commencing an action against it prior to the expiration of the July 22, 2000, statute
of limitations).

Here, there was a defect in the description of the Plaintiff, but ultimately if any amount of
damages was awarded to the Estate, whether the action was brought in the name of the correct
administrator or not, the benefit of that award would flow directly to the Estate.  "Allowance of
an amendment to a pleading is the rule and denial the exception, although an amendment is not
permissible which will substantially change the issue."  Atlantic Veneer Corp. v. Sears, 232
N.W.2d 499, 503 (Iowa 1975).  "[T]he critical determination is whether the proposed amend-
ment substantially changes the issues before the court."  Gutierrez, 2000 WL 1027264, at *2.  An
amendment to list Joshua as the administrator would not substantially change any of the substan-
tive issues before the Court.  The Court concludes that applying Iowa law under 15(c)(1), the
amendment would be permitted.

Plaintiff has clearly satisfied Rule 15(c)(2).  The amendment that would be sought would
make no substantive changes to the claims asserted in the Complaint.  In fact, absolutely no
changes would be made at all; the sole purpose of seeking an amendment at this stage would be
to comply with Rule 15(a), which requires written consent or leave of court to effectuate an
amendment.  Thus, the claims asserted in the Amended Complaint would arise out of the same
conduct, transaction, and occurrence set forth in the original pleading.  Because Rule 15(c) is
written in the disjunctive, the inquiry could end here with the conclusion that Plaintiff has satis-
fied both Rule 15(c)(1) and Rule 15(c)(2) and that an amendment would relate back to the date
of the original pleading, and thus there is no statute of limitations issue present because the
original pleading was filed prior to the expiration of the limitations period.  However, because
Plaintiff addresses Rule 15(c)(3), the discussion will examine that portion of the rule as well.

19

Rule 15(c)(3) is also satisfied under the present circumstances.  Rule 15(c)(3) requires that where an amendment changes the party or the naming of the party against whom a claim is asserted, first Rule 15(c)(2) must be satisfied.  As discussed above, it has been satisfied in the present case.  In addition, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment received notice of the institution of the action such that the party would not be prejudiced in maintaining a case on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought in the name of the correct administrator.[13]  The language of Rule 15(c)(3) clearly contemplates amendments that change or add a defendant; however, other courts have extended the rule to address situations where an amendment would add or change a plaintiff.  See Cliff v. Payco Gen. American Credits, Inc., 363 F.3d 1113, 1132 (11th Cir. 2004); SMS Fin. Ltd. Liab. Co. v. ABCO Homes, Inc., 167 F.3d 235, 244-45 (5th Cir. 1999); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2nd Cir. 1997); Nelson v. County of Allegheny, 60 F.3d 1010, 1014-15 (3rd Cir. 1995).

> This extension of Rule 15(c)(3) to amendments involving plaintiffs rests on solid ground.  When Rule 15(c) was amended in 1966, the advisory committee wrote:
> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

---

[13] Indeed, the affirmatives defenses set forth by both Defendants demonstrate that they were in fact aware that the case was brought by the wrong administrator.

20

Payco Gen. American Credits, Inc., 363 F.3d at 1132 (quoting Fed. R. Civ. P. 15 Advisory Committee's note to the 1966 Amendment).  The Court concludes Plaintiff has satisfied the notice requirement under Rule 1 (c)(3).

MUM argues it has been prejudiced, claiming it has expended over $127,000 in fees and expenses for the defense of the California action, and that it would be deprived of easy access to Khal and Evelyn for purposes of taking depositions due to the Rules of Civil Procedure.  Fed. R. Civ. P. 37 and 45(c)(3)(A)(ii).[14]  These facts do not merit a finding that MUM would be prejudiced in maintaining a defense on the merits to such an extent that an amendment should not be permitted to relate back.  First, the California action was filed after the instant case; and additionally, it has since been stayed pending the outcome of this litigation.  Early on in the California litigation, MUM could have requested a stay pending the outcome of this case but instead choose to remove the California case to the federal district court located in central California.  Upon a finding that complete diversity was lacking, the federal court remanded the action back to the California Superior Court.[15]  Additionally, while it may be inconvenient for MUM to depose Khal and Evelyn due to their nonparty status and their residency in California, this alone can not suffice to show the requisite prejudice.  MUM is not the master of Plaintiff's case, and had this case, at the time it was originally filed, been brought by the legal co-administrators, Khal and Evelyn, and later amended to remove Khal and Evelyn and substitute

_____

[14] In making this argument, MUM cites to Rule 37, but Rule 45(c)(3)(A)(ii), which pertains to quashing subpoenas for nonparties who are outside of the 100-mile radius, may more squarely address their concern.

[15] Based upon the lack of diversity in the California action, MUM's argument that Khal and Evelyn switched administrators in order to avoid a 28 U.S.C. § 1404 transfer is misplaced; there could be no such transfer if the court did not possess jurisdiction over the case, a point not missed by the California federal court when it denied the Motion to Transfer as moot.

Joshua as the newly appointed administrator once his appointment was effective, MUM would

be in essentially the same position they are now regarding access to Khal and Evelyn for

purposes of taking depositions.  The Court concludes an amendment would relate back under

Rule 15(c)(3).

### CONCLUSION

The Court concludes that under Rule 17(a), a reasonable time has elapsed between the

March 27, 2006, indication in the record that MUM did not believe that Joshua was the admin-

istrator of the Estate, and the June 16, 2006, ratification of the commencement of the action by

Joshua via affidavit.  The ratification would have the same effect as if the action had been

commenced within the limitations period on February 24, 2006, in the name of the real party

in interest.

Alternatively, the record also supports a finding that after consideration of the factors

relevant to Rule 15(c), an amendment would relate back to the date of the original pleading

under Rule 15(c)(1), 15(c)(2) and 15(c)(3).  MUM's Motion for Summary Judgment (Clerk's

No. 32) must therefore be **denied.**

**IT IS SO ORDERED.**

Dated this 2nd day of November, 2006.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT